We'll hear Oberlander v. BayRock Group et al. Yes, sir. My name is Frederick Oberlander. I'm an attorney pro se appellant. At the time the order in question was issued by the magistrate, he had a few minutes before approved my substitution. Up until then, I was lead counsel of record in the underlying case, and then I had no connection to the underlying case other than the order that he issued after that. So I am appearing in my own behalf. Mr. Oberlander, you're appealing the district court's order of February 1, 2016? Well, it was entered on the 2nd just to keep the time. We have jurisdiction. I didn't screw up. I want to just try to understand the facts here. That order by Judge Schofield vacated an April 30, 2015, order of magistrate Judge Moss. Is that correct? Yes. So the district court on February 1 or February 2 granted you the relief that you requested? No, it granted me relief from the judgment but not relief from the aggrievement. From the what? I'm sorry. It granted me relief from the judgment or order or whatever you call what magistrate Moss did. It did not cure the aggrievement. The agreement? Aggrievement. Aggrievement. It did not cure the injury. The injury. Well, I mean, Judge Schofield is not a therapist, Mr. Oberlander. We mean didn't cure the aggrievement. Your Honor, it's Judge Moss's order, assuming that it had legal consequence, was a prior restraint by definition. It infringed speech. I don't care what the speech was. It infringed speech. On the other hand, if his order was a legal nullity because he lacked the reference authority, then it was a chilling effect, particularly when he said my authority in doing this is I'm a Federal judge and I'll put you in. Are you suing for money damages here? I beg your pardon? Are you suing for money damages here? Oh, sorry. No. Well, I'm glad to hear that. So what do you want us to do with your aggrievement? I wish you to issue a ruling or holding that Judge Schofield made an error when she said When she undid it? I beg your pardon? She undid it but not have an issue. She said that it is correct that the court lacks equity jurisdiction to issue the order. It had no authority to do it. However, it was okay to do it for nine months. What she did was to take a 60-year doctrine of this court that goes back to 1930 that says that when You want us to tell her to say that no pro tonque, back to day one, that should have been undone. I don't mean to be presumptuous. If you ask me what I would be writing, you're asking me what I'm here to ask for. I'm asking you to say, well, the learned judge below was correct that the court had no authority to issue the order. Its lack of authority does not depend on the temporality or tenor or duration. It never had any authority. This is the type of error of constitutional dimension which is called capable of repetition yet evading review. If every time a judge issued, I'm sorry, did you interrupt me? I didn't hear you. No, no. I'm just trying to ask a few questions here. Are you appealing a judgment of the district court? It's a final appealable order because it collaterally permanently disposed of everything I had in the case at the time. It certainly is appealable. And you're appealing the order. I'm appealing the part of the order that upheld the injunction or whatever you call it for the first nine months. She said, I am vacating it, but what I actually asked for in my papers were declaring it was void for lack of equity authority. And she said, I'm vacating it. Perspectively, you don't have anything to worry about, but it was fine to do it for nine months, which means the next time somebody wants to do it, however misguidedly a judge makes a mistake, they're going to think they can. It's very dangerous. That's why we have the doctrine of capable of repetition and evading review. It is moot, but that doesn't mean it's not appealable. Let me ask, follow up on Judge Hall's question. You're not seeking damages. Is that right? Of course not. No, it's fine. We'll go slowly and we'll try to figure out what's going on. I understand. But it would be offensive. I'm not suing Judge Moss. Of course not. No, you're not suing anybody in particular for damages. No. All right. Are you seeking injunctive relief? You mean some type of writ? Yes. No, I'm simply seeking an order from this Court stating under the doctrine of a presumptive First Amendment injury. It's no different than any other of the hundreds of cases here where somebody has a TRO issued, and then by the time he gets in the court, the 14 days lapse, and the propeller court would say, well, you're not under a TRO anymore, and the answer is I could be under one tomorrow. You've got to issue a ruling that in this situation the TRO. All right. Is there any evidence that you are subject or will be subject or may be subject to some further order embraced by this litigation? Yes. Tell us about that. Well, going off the record, I just don't want to be. I'm happy to answer you, but we're going off the appellate record. It's not from below. All right. Let's not go off the record for a moment. I understand that you're basically appealing Judge Schofield's opinion. That is, the basis on which she granted you relief. Is that right? I'm appealing her, which, excuse me, without fussing with the vocabulary, I don't mean to insult the court. It's not a one-word answer. Okay. Based on Judge Schofield's opinion, if somebody came along and said, you know, Mr. Oberlander, we're going to prosecute you because five days or five minutes or five hours after Judge Moss issued that order, you did something that violated it, they could do it, because what Judge Schofield said was that order was void, no authority. However, it was okay for the first nine months. I shouldn't be in that position. There isn't anybody in this Court that doesn't know that I've been under investigation. Why isn't that issue reviewable after the determination of all of the – I take it the nine months has expired, whatever that period is, right? So whatever you did is done. I'm sorry. Is that a question? My time is going to run out. I don't mean to be rude. I'm happy to say that. An ill-formed question. You're saying that there was a period during which, if you'll read the district court's decision in the way that you do, that you were – had some exposure, potentially, depending on what you did with these materials. Is that correct? Yes. That's one of the problems with it, the major problem. That was a finite period of time. That period is over. Yes. Okay. And so it's – that period is done. Why is it that we can't review that? Some panel of our Court can't review that issue after this case is fully resolved? Because we – You rely on the collateral order doctrine, are you not? I beg – You are relying on the collateral order. Collateral bar rule has nothing – I beg – hold it, hold it. By collateral – I'm sorry, I don't mean to be speaking like that. Just the time went out, so I don't want anybody to – Don't worry. If you're referring to the collateral order doctrine, that makes that decision of hers, her judgment order, whatever you call it, appealable because – That's what you're relying on. That was my question. The collateral order doctrine is what you're relying on. Yes, but I would – if I may just finish the answer, that's because I'm not a party or otherwise a participant. If I were a party in the case, I probably, without having researched it, would have to wait until the end of the case, and then I would be here for the exam. I'll take the first part of your answer, which was yes. Yes, you're relying on the collateral order doctrine. As an exception to the – it is fine. Yes, the collateral order doctrine as a non-party.  I'm sorry if I took too long. Yes. It's interesting to me why this order, given the fact that it's a finite period of time that's over that we're talking about, isn't – is effectively unreviewable. Because it would mean any time any judge ever issued a temporary restraining order that was either unconstitutional or void, whether it was illegal or unlawful, the moment it ran out, it would become unreviewable and it would result in a situation where judges – I'm sorry, Your Honor. It's extremely clear. When a judge issues an order, particularly one that has consequences of criminality from infringement, it is imperative a court be able to review it to stop it from happening again. The judge made a mistake. Judges make mistakes. That's why we're all here. And the judge said that we don't have any authority to do this, but we do for nine months. And your direct precedent in 1986 in Bridge Catscan, the case exactly on all fours. It couldn't be more on all fours. Could you point us to the page in the record where Judge Schofield said in substance what you just said? I'm sorry. I don't have that with me. There was a – but I assure you, Your Honor, I will – Are you a lawyer? Are you a member of the bar of this court? I am, Your Honor, but – All right. And you're here arguing before us and you don't have the documents in front of you that you want us to review? It's in the published decision. I'm sorry. And I asked you where it was. So would you point me to that page? Or, sorry, never mind. I can quote it to you verbatim. I'm sorry, Your Honor. It didn't occur to me since you have the record and I'm not making a mistake. What Judge Schofield said was that despite all the apparent wrongdoing, nevertheless, courts have no authority to permanently enjoin the use or dissemination of the materials without a plenary action or other proper invocation of Article III authority. I'm paraphrasing it. Nevertheless, for the first nine months, the order was a perfectly valid use of the court's authority, not unlike the Second Circuit's order that it issued when it temporarily enjoined or preliminary – it was a temporary injunction. It was issued in 2905. Now, I'm happy I will send in a transmission and underline it for you, but it is right at this point, right, that the court has no authority, but it was fine for nine months because it was a temporary measure. And as – Thank you, Mr. Oberlin. I've given you about four extra minutes, but you've reserved three minutes, and we look forward to hearing your rebuttal. Thank you. All right. Let's hear from Mr. Liston. Good morning, and may it please the Court. Joshua Liston for Appali Felix Sater. Your Honor, we've covered the issues in our brief, and I won't repeat what the arguments that are in there. I just did want to make one factual clarification based on what Appellant said, and that's with respect to whether the order was – Judge Moss's order was even in effect for nine months. I think it's kind of clear on the record that the date following the order, Judge Schofield stayed – I thought it was a day, myself. I'm sorry? I thought it was one day, but – At most. I mean, there's ways to parse it. So the April 30th order gave a deadline by May 1st to do certain things, and on May 1st the stay order came. So I don't think there's any real argument that most of what the order was telling Oberlander to do was actually in effect because the effective date was stayed. But whether it's a day or nine months, it's a finite period that's completed. So the analysis remains the same. Absolutely. And unless Your Honors have further questions, I can submit on the papers. Well, let me ask just a couple of questions to make sure I understand the record fully. What do you understand the district court's order to have accomplished? We understand that it simply vacated the Judge Moss's order. Pure as that. Which, in your view, was not in effect except for a few hours between the time that Moss entered the order and the time that Judge Schofield entered her order. Correct. What about the merits? What do you understand to be the merits of the Movens appeal? Well, the merits of the Movens appeal, and this is where I want to add a kind of further amplification of something in our brief. My client is Felix Sater. The Sater documents are a subset of what's been referred to as the Bayrock documents. And the Sater documents, I think, as the Court realizes, contains kind of highly sensitive information about my client's extensive cooperation with the government, and there are separate proceedings that deal with appellant's violation of those orders. Mr. Oberlander has submitted an affidavit to Judge Kogan in the other proceedings in 2014 saying that he's actually turned over all of the Sater documents and kind of deleted any copies that he has. So there is a kind of particular point in this appeal that with respect to the Sater documents, which are the documents that my client has an interest in, there's almost a further kind of mootness point here, which is that the Judge Moss's order as to the Sater documents did nothing that Judge Kogan's order hadn't done and did nothing that at least the appellant has represented to the Court in an untested way that he had already complied with. In what way — well, let me ask you about the relief requested by Mr. Oberlander. It's your view that he doesn't need any relief, is that right? Right. And why don't you restate why that is so? Sure. Well, a different way of looking at it is, I think, is there's something else going on here. And as I mentioned, and there's reference to this in a note in the reply brief, that there are a number of existing orders that this Court has issued that other than a potential argument to make before Judge Kogan in which he would say, well, look, this one-day order that Judge Kogan has issued, it's a one-day order that   Judge Moss put before — put before the Court and that was vacated, never should have been there, and therefore, Judge Kogan's orders, Judge Glasser's orders, this Court's orders all fall by the wayside. I mean, that's — our best guess is what's really going on here. Well, I mean, there's — as I understand it, and of course this is all speculation, but there's potential exposure where there might have been a violation of a court order even during that finite period, whether it's a day or nine months, and that's a real issue. And the question before us, though, is as a matter of our appellate jurisdiction whether that's reviewable after the full case is done or whether there are some criminal or other sanctions, whether we should review it now. I understand that. And I think that the — the kind of — it's essentially being tossed out that there is some kind of concrete harm. I mean, I did a kind of careful look at Judge Moss's order in overlaying the stay. And you really get into a kind of particular question whether there was dissemination of the — let's call them the Bayrock documents in the first instance, whether there was dissemination of the Bayrock documents from the time between Judge Moss entered his order and the following day when the order was stayed. As to the — That's the problem. No. Understood. And this is where I refer back in the first instance to my clarification on the Sater documents. We have been told, and there has been sworn representations to the court, to Judge Kogan in 2014, that the Sater documents had already been conveyed. So to answer your question, to the extent that's not true, we have a different issue. Conveyed to whom? I'm sorry. That the PSR, for instance, that that had been prior conveyed to the court, and that copies of other documents had been destroyed. And to the extent that's not true, there's a problem. I understand that. And if Mr. Oberlander wanted to make that clarification, in order to get a better appeal here to say that there was something really concrete at issue, that the order that could be read to require him to turn over the Sater documents in 2015 means something to him because he actually has it, he's invited to make that representation. Let me ask you about your rights or interests. Is there any reason to believe that the relief requested here affects your rights or interests in any way? In a way, yes. And that really is to the extent that the kind of arguments here, if accepted – I'm talking about the merits arguments – were to then be used in order to undercut other orders in other proceedings. Now, yes, I'm being somewhat speculative here. There is, again, reference in the reply brief to what one needs to do when there is a potential contempt proceeding and whether you need to appeal an appealable judgment in order to kind of protect yourself against an argument that you waived a challenge in the contempt proceeding to the validity of the order. I mean, here, I don't think that's really an issue because this is a non-appealable judgment, and so that issue is better left for the contempt proceeding. But other than that, look, the order was vacated. We can live with it. Speaking again on behalf of my client, there are other orders in which we understood to compel the same relief, and we have understood that that relief had been actually effectuated by the either return or destruction of those documents. Can you describe for us very briefly what the status of collateral proceedings is and what courts these proceedings are in? Yes. Very briefly, starting with this case, as Your Honors know from the record, at the hearing in which Judge Moss orally gave the order, the plaintiffs had substituted counsel. A new complaint has been filed, and there's been motion practice on that, and that case is continuing, I think it's fair to say, without court, before Judge Gofield. And that is the essentially the Civil RICO case that is at the kind of heart of this matter. Overlaid on top of that was the issue of the documents. The issue of the documents is largely dissipated from this case proper. The issues of the documents are squarely before Judge Kogan, who is still handling the contempt proceedings. He has formally stayed to those proceedings pending a report from the Northern District of New York on the criminal contempt referral that he's made. He has made a referral which is being handled by the Northern District of New York. That's correct. U.S. Attorney's Office there. And what is the status of that proceeding? Do we know? Do we care? It is pending, and Judge Kogan is awaiting a report. And the report is – is it a report or is it action, criminal action of some kind? The U.S. Attorney's Office is not usually in the business of issuing reports. What is it? I understand that. Look, it could very well be an action. Judge Kogan has suggested that he would like an update on it. That's why I used the word report. All right. Thanks, Judge. The U.S. Attorney's Office is, I will say, charged with investigating the matter and bringing a contempt action before the district court if it determines that there's sufficient evidence. Correct. And that has not occurred yet, to your knowledge? Correct. One way or the other? That's true. Thank you. Thanks very much. Thank you, Your Honor. All right. Mr. Oberlander, you've reserved three minutes. Sometime before the debate started in the election, I remember watching the clip when Donald Trump probably won, in which he said, Hillary is complaining that I took advantage of a crash in housing prices to buy them up cheaply and make money. Pause. Who the hell wouldn't? Do I understand, I believe, that my colleague here has just said, Mr. Oberlander has an ulterior motive. He wants an appellate court of record to issue an order, ideally in a precedential decision, so that he can use it as precedent. Of course I do. Who wouldn't? I don't know why that's nefarious, but the bottom line is to clear up some errors, since I only have two minutes left. There is nothing pending in front of Judge Kogan. Judge Kogan first said he was staying everything and then said, I'm ordering the clerk to close and strike all the motions off the docket. It's without prejudice, but basically the posture of that case is in the equivalent posture of an involuntary 41A dismissal by the court without prejudice. There is nothing pending before him. It's free to be reinstated civilly. I don't have any more idea than anybody here does what's going on in the Northern District, but as far as this case is concerned, Mr. Bernstein gave me information. He gave me information about his life, about his home. He gave me information I already had, and he gave me information which was long before public, two years before the order came down from Judge Moss. Taken literally, that order says whatever he gave you, shut up. Don't disseminate it. It doesn't say whatever he gave you that isn't public. Whatever he gave you that isn't available somewhere else, it says whatever he gave you. Here's something that he gave me. You don't know what it is, if you'll forgive me. Nobody does, because there weren't any hearings. If it weren't void, it would be so clearly overbroad and facially unconstitutional, it would set a record for that, because nobody has any idea what he gave me other than him and me. And as to the tenor and duration of it, with all respect to my colleague, the order was written as to me and Mr. Lerner in six paragraphs. Two of them required me and Mr. Lerner to turn over everything Bernstein gave us and to turn over all of our work product derived from it. And to do that within two weeks or a day, depending on how you date the thing, and then thereafter not disseminate anything until we could prove why we had a right to have it. She, Judge Schofield, stayed that aspect. She stayed the turnover. She did not stay the dissemination. As far as I'm concerned, I was under a gag order for nine months that was facially unconstitutional, transparently invalid, and void. And we don't do that in this country, and we don't have magistrates that have no injunctive authority tell anybody anywhere, let alone an attorney, sir, my authority when asked what his legal authority is, is that I'm a federal judge and I'll put you in jail if you don't comply. And if you'd like to object to my jurisdiction or authority, first comply. Doesn't work like that. I'm sorry about being vehement, but that is an appalling thing. And if I'm here in trouble by having a nefarious inference made or implication made that because I want this Court to set precedent that no magistrate will ever dare do that again, that's exactly right. Thank you very much. We'll reserve decision, and we are adjourned.